IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA BUTLER, individually and behalf | : | Civil Action |
| of a class of similarly situated persons, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | No. |
| | : | |
| MARKET VIEW, LLC, d/b/a DebtTrader, | : | |
| NORTHWOOD ASSET MANAGEMENT | : | |
| GROUP, LLC and various John Does, | : | CLASS ACTION |
| | : | |
| Defendants | : | |

## CLASS ACTION COMPLAINT

### I. Introduction

1.      Plaintiff on her own behalf and on behalf of a proposed class of victimized

consumers brings this action against (a) a debt buyer, Northwood Asset Management, Inc, (b) a

debt broker, Market View LLC, which operated in the marketplace under the name DebtTrader,

and (c) associated, as yet unknown, persons. These entities are being sued for their knowing

participation in a conspiracy with a notorious "payday lending" enterprise known as American

Web Loans ("AWL"), which victimized Plaintiff and the class. Plaintiff asserts damage claims

under the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968

and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a-1692k, and seeks

declaratory relief under state law.

2.      Plaintiff and the consumers in the putative classes were victimized by "payday"

loans, which are short-term credit products sold with crushing interest rates and targeted at low-

income individuals with high credit risks. The credit products offered by AWL were sold over the

internet and were described as "fast cash" that provided funds immediately. Although this form of

consumer credit is illegal under the usury law of Pennsylvania and many other states, well-lawyered, highly organized schemes to evade such legal restrictions have proliferated.

3.      One of the most common forms of these illegal schemes has been the so-called "tribal lending" schemes. In a tribal-lending scheme, otherwise known as "rent-a-tribe," a payday lender recruits a Native American tribe to establish a tribal business entity to function as the nominal, originating lender in order to create a tribal veneer for the business. The revenues of the business flow principally to the nontribal actors that market, underwrite, and collect the loans. The payday lender uses the veneer of tribal participation to abuse the legal doctrine of tribal sovereign immunity in an effort to insulate the usurious schemes from state regulatory authority. These schemes principally operate over the internet.

4.      American Web Loan (or "AWL") is one of the more notorious and long-lasting of these lending websites. It is purportedly operated by a Native American tribe, but for all practical purposes it has been in fact controlled by and for the profit of non-defendant Mark Curry and entities controlled by him, including the non-defendant entitles MacFarlane Group and Sol Partners. Plaintiff and the members of the putative class are AWL borrowers.

5.      Like other lending enterprises, tribal lending schemes rely on a variety of other services, some provided in-house and some outsourced, as essential elements of their business models. These services might include call centers, debt servicing, lead generation, and credit reporting. Such schemes also rely on entities, like the Defendants here, to purchase past-due debt, which often makes up a significant portion of a tribal lending portfolio due to the onerous, usurious terms of the loans.

6.      The Defendants here are among entities that conspired with the AWL tribal lending scheme that victimized Plaintiff and the proposed class by providing the essential service

of purchasing nonperforming loans from the scheme. Defendant Market View, LLC, which operates under its trademark "DebtTrader," is an online platform that connects tribal lending businesses to debt-buyers willing and able to purchase, and thereby monetize, the lenders' nonperforming loans.  Defendant Northwood Asset Management Group, LLC ("Northwood") is a debt-buyer that has purchased millions of dollars in illegal, "tribal" payday loans through DebtTrader.

7.      Plaintiff Butler was ensnared into a 600% payday loan made by AWL. Her loan was sold to Northwood in a transaction brokered by DebtTrader. AWL is one of several tribal lenders that launder its illegal debt through DebtTrader, and Northwood is one of many debt buyers that is engaged in collecting AWL loans purchased through DebtTrader.

8.      Plaintiff Butler is filing this class action on behalf of all AWL borrowers whose loans were sold to debt buyers in transactions brokered or arranged by DebtTrader. She is seeking treble damages under RICO, as well as attorney's fees and costs, for all payments made on these loans. For the subclass of these consumers whose loans were sold to Northwood, she is also seeking actual and statutory damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a-1692k. Plaintiff Butler and the proposed class are also seeking declaratory relief under the relevant state law.

## II.  Jurisdiction and Venue

9.      This Court has jurisdiction over Plaintiff's RICO claims pursuant to 18 U.S.C. § 1964(c). The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district and a substantial part of the events giving rise to Plaintiff's claims occurred

in this District.

### III.  Parties

11.     Plaintiff Diana Butler is an adult individual who resides in Lancaster County, Pennsylvania.

12.     Defendant Market View, LLC, previously known as EverChain LLC, d/b/a DebtTrader (and hereafter referred to as "DebtTrader"), is a limited liability corporation that is incorporated in Nevada and has its principal place of business in Henderson, Nevada. It operates an online debt marketplace that connects lenders to debt buyers interested in purchasing delinquent, non-performing loans, and manages all aspects of the debt purchase, including the bidding process, due diligence, funding and account transfer processes.

13.     Defendant Northwood Asset Management Group, LLC (hereafter "Northwood") is a limited liability corporation that is incorporated in New York and has its principal place of business in Erie County, New York. It is a debt buyer that is a member of DebtTrader's network of debt buyers and that regularly purchases delinquent consumer debt in transactions arranged by DebtTrader. Northwood collects the debts it purchases either directly or through debt collectors it hires.

14.     Plaintiff also names as Defendants various John Doe entities, the identities of which she does not yet know, including, but not limited to the members or managers of Market View, LLC and Northwood Asset Management Group, LLC, who are directing these LLCs to engage in the illegal business of collecting usurious debt or to facilitate others to do so.

15.     There are other entities or persons who are not named as defendants, but who played a significant role in the facts alleged herein. This includes AWL, Inc., a corporation formed under the laws of an Oklahoma-based Native American tribe and maintaining a place of

business in Red Rock, Oklahoma; Mark Curry, a payday lending businessman; and many companies that Curry has owned and controlled and through which he has conducted this business. Among these Curry-owned companies are MacFarlane Group and Sol Partners.

## IV.  Facts

16.     On or about December 28, 2018, Plaintiff Butler applied on her home computer for a $1,000 cash loan offered by a company named "AWL."

17.     The AWL website purported to be operated by a company owned by an Oklahoma-based Native American tribe, the Otoe-Missouria. In fact, however, this website was established, and has been operated for years, by a payday lending kingpin named Mark Curry who, using various companies that he owned and/or controlled, was engaged in a scheme commonly referred to as "rent-a-tribe" lending scheme.

18.     Under this scheme, while AWL would serve as the nominal lender, Curry-owned and/or -affiliated entities would conduct all of the substantive operations for the enterprise including, among other things, marketing and lead generation, application processing, underwriting, technical support, electronic funds transfers, loan servicing, and collections.  Moreover, funding for the loans would be provided by Curry-owned and affiliated entities, as well as other investors facilitated by Curry.  In exchange for enacting tribal lending laws and creating the business entities necessary to enable and carry out this scheme, Defendant Curry's payday lending operation would provide the cooperating tribe with a small percentage of the revenues generated by AWL loans.

19.     Plaintiff Butler was approved for the loan almost instantaneously, based on the automated underwriting mechanisms utilized by Curry and his companies, and the $1,000 was deposited in her bank account the next day. Also arriving after the loan had already been

approved were disclosures not contained in the web presentation available to loan applicants, which informed her that her loan would accrue interest at the rate of 602.32%, and that it would be repaid through twenty (20), bi-weekly, automatic debits from her bank account. This meant that that over the course of ten months she would end up repaying $4,860.32 for the $1,000 loan.

20.     The loan offered to Plaintiff Butler was illegal in Pennsylvania and many other states. For example, in Pennsylvania, the interest allowed to be charged on an unsecured, consumer loan less than $25,000 is six percent (6%), 41 Purdons Pa. St. § 201, and any amount charged in excess of that cap is void. 41 Purdons Pa. St. §§ 501-502.

21.     There are other jurisdictions, besides Pennsylvania, that prohibit all forms of payday lending, including Arizona, Ariz. Rev. Stat. § 6-613(B); Arkansas, Ark. Code Ann. §§ 4-57-104, 105; Colorado, Colo. Rev. Stat. Ann. § 5-2-201; Connecticut, Conn. Gen. Stat. § 36a-558 (c)(1); Georgia, Ga. Code Ann. §§ 7-4-2, 16-17-2, Maryland, Md. Code, Com. Law § 12-314; Massachusetts, Mass. Gen. Laws Ann. ch. 271, § 49; Montana, Mont. Code Ann. § 31-1-107; New Hampshire, N.H. Rev. Stat. Ann. § 399-A:17; New Jersey, N.J. Stat. Ann. § 31:1-1; N.J. Stat. Ann. §§ 17:11C-32, 33; New York, N.Y. Gen. Oblig. Law § 5-511; N.Y. Banking Law § 355; North Carolina, N.C. Gen. Stat. Ann. §§ 24-1, 53-166; South Dakota, S.D. Cod. Laws § 54-4-44; Vermont, Vt. Stat. Ann. tit. 9, §§ 41a, 50; West Virginia, W. Va. Code Ann. §§ 47-6-5a, 6; and the District of Columbia, D.C. Code Ann. § 28-3303. *See* Consumer Federation of America, "Legal Status of Payday Lending by States," https://paydayloaninfo.org/state-information.

22.     Moreover, at least twelve additional jurisdictions that allow some forms of regulated payday lending, treat any loans that fail to abide by the strict parameters of such licensing rules as being void as matter of law, including Alabama, Ala. Code § 5-18-4; Florida,

Fla. Stat. § 516.02; Idaho, Idaho Code § 28-46-402 ; Illinois, 815 Ill. Comp. Stat. 122/4-10; Indiana, Ind. Code Ann. § 24-4.5-5-202; Kentucky, Ky. Rev. Stat. Ann. § 286.4-991; Minnesota, Minn. Stat. §§ 47.60, 47.601; Minn. Stat. Ann. § 56.19; New Mexico, N.M. Stat. Ann. § 58-15-3; Ohio, Ohio Rev. Code Ann. § 1321.02; Oregon, Or. Rev. Stat. § 725.045; Rhode Island, 6 R.I. Gen. Laws Ann. § 6-26-4; and Virginia, Va. Code Ann. § 6.2-1541.

23.     For years the use by payday lenders of tribal veneers as an artifice to evade state law has been widely publicized. *See, e.g.,* H.R., Committee on Financial Services, Dem. Staff Report, "Skirting the Law: Five Tactics Payday Lenders Use to Evade State Consumer Protection Law," June 16, 2016, at 15 ("Renting Sovereign Immunity"); Carter Dougherty, "Payday Lenders and Indians Evading Laws Draw Scrutiny," Bloomberg, June 5, 2012; Jeff Guo, "Many States Have Cracked Down on Payday Loans. Here's How Lenders Still Get Away with It," Washington Post, February 9, 2015.

24.     The AWL lending scheme is particularly notorious in the world of online payday lending among state and federal regulators. Among other things, it is generally known that:

- Several states, including Connecticut, New York, Washington, and Arkansas, have taken various regulatory actions against AWL and Curry.

-  In October 2014, the Second Circuit of Appeals, affirmed a district court's denial of a request by various Native American tribes to enjoin a state lending regulator's cease and desist order directed at various tribal lending enterprises, ***which specifically included AWL***. *See Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 114 (2d Cir. 2014) (noting that "a tribe has no legitimate interest in selling an opportunity to evade state law').

- There were highly publicized governmental enforcement actions against a similar "rent-a-tribe" enterprise that the same tribe, the Otoe-Missouria, was engaged in with a different, nontribal, payday lender. *See Commonwealth of Pennsylvania v. Think Fin., Inc.,* No. 14-CV-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Consumer Fin. Prot. Bureau v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, (D. Mont. Aug. 3, 2018).

- There has been a private RICO class action pending against AWL and Curry pending since 2017. *See Solomon v. Am. Web Loan*, No. 4:17CV145, 2019 WL 1320790 (E.D. Va. Mar. 22, 2019).

25.     The Federal Government had obtained highly publicized criminal convictions under RICO against two payday loan kingpins who, like Curry, used "rent-a-tribe" arrangements to attempt to evade state usury law. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and his attorney, Timothy Muir, on all fourteen felony counts brought against them. *United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y) (the "Tucker Criminal Matter").[1] On November 27, 2017, a jury in this District convicted Charles M. Hallinan and his attorney, Wheeler K. Neff, on seventeen felony counts. *United States v. Hallinan, et al.*, No. 2:16-cr-00130-ER (E.D.Pa.) (the "Hallinan Criminal Matter").[2]

26.     Ms. Butler made seven payments of $243.10, meaning that she repaid the $1,000 principal, plus close to $700 in interest. Virtually all of the interest charged was illegal under Pennsylvania law.

27.     After making those payments, in or around April 2019, and having decided that she had been taken advantage of and already paid well more than she had borrowed, she stopped the automatic payments at her bank and refused to pay anything more to AWL.

28.     A critical aspect of the AWL loan enterprise that Curry and his companies devised and operated is the sale of nonperforming loans to debt buyers who pay cash for the

---

[1] *See* Press Release, United States Department of Justice, Scott Tucker and Timothy Muir Convicted at Trial for $3.5 Billion Unlawful Internet Payday Lending Enterprise (Oct. 13, 2017) (available at https://www.justice.gov/usao-sdny/pr/scott-tucker-and-timothy-muir-convicted-trial35-billion-unlawful-internet-payday).

[2] *See* Press Release, United States Department of Justice, Two Men Found Guilty of Racketeering Conspiracy in Payday Lending Case (Nov. 27, 2017) (available at https://www.justice.gov/usao-edpa/pr/two-men-found-guilty-racketeering-conspiracy-paydaylending-case).

rights to attempt to collect on these loans. For years, and on a routine basis, Curry used the services of DebtTrader to broker these debt sales.

29.     In accordance with that practice, after Plaintiff stopped paying her loan, AWL included that loan in a bulk sale of accounts to Northwood, through the DebtTrader platform, notwithstanding the fact that the loan was illegal; that Ms. Butler had repaid well in excess of the amount she borrowed; and that the purported remaining indebtedness owed to AWL was void as a matter of Pennsylvania law.

30.     Defendant Northwood purchased the Butler account on or about July 23, 2019, through the DebtTrader marketplace along with other AWL accounts.

31.     Both DebtTrader and Northwood knew that the Butler loan and other AWL loans were illegal. DebtTrader in fact promotes itself to debt buyers as, among other things, being able to provide copies of loan contracts and payment histories to buyers so they know exactly what kind of debt they are buying.

32.     On information and belief, Northwood acquired thousands of AWL accounts, representing millions of dollars of supposed consumer indebtedness that was, in fact, illegal.

33.     With full knowledge that the AWL loans they were trading in or purchasing were illegal under the law of Pennsylvania and the other 28 jurisdictions represented by the class, Defendants nonetheless decided to facilitate and profit from the AWL scheme.

34.     On information and belief, Northwood does not use the courts to collect AWL and other payday-like loans it acquires, in recognition of their underlying illegality, instead relying on their ability to induce payments through aggressive telephone collections.

35.     Soon after purchasing the AWL portfolio containing the Butler loan, Northwood began contacting Ms. Butler, demanding payment. She received numerous debt-collection phone

calls from employees of Northwood or from collection agents working on Northwood's behalf. The most recent of these calls was made on or about March 4, 2020.

## V.  Class Action Allegations

36.      Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to Federal Rules of Civil Procedure ("Rule") 23(a) and 23(b)(2), and (b)(3), as a representative of the following Class:

> All persons who took out AWL loans, (a) who, according to Defendants'
> records, reside in any of the following 29 jurisdictions:  Alabama, Arizona,
> Arkansas, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana,
> Kentucky, Maryland, Massachusetts, Minnesota, Montana, New Hampshire,
> New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon,
> Pennsylvania, Rhode Island, South Dakota, Vermont, Virginia, West Virginia,
> or the District of Columbia; and (b) which loans were sold and assigned to a
> debt buyer through the DebtTrader platform ("the Class"); and the Sub-Class
> of these borrowers whose loans were purchased by Northwood Asset
> Management Group ("the Northwood Sub-Class").  The Class period begins
> four years prior to the date this Complaint was filed and continues through the
> present.

> Plaintiff reserves the right to redefine the Class prior to certification.

37.      As set forth below, this action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of Rule 23.  The members of the Class are readily ascertainable from records maintained by Defendants.

38.      Numerosity.  Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, Plaintiff believes that there are tens of thousands of individuals who are members of the Class.  The exact number of Class members and their identities are known by Defendants or are readily ascertainable from Defendants' records.

39.   <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff's claims are based on the same facts and legal theories as each of the members of the Class.  Plaintiff and all Class members were charged interest rates on online payday loans from AWL, which rates exceeded the lawful interest rate caps in their states of residence.  Plaintiff and all members of the Class are the subject of debt collection activity directed against them regarding these illegal debts.

40.   <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.  Plaintiff has retained counsel that is competent and experienced in the prosecution of complex class action litigation and have experience with class action litigation involving tribal lending schemes.  Plaintiff's counsel will undertake to vigorously protect the interests of the Class.

41.   <u>Commonality</u>.  There are questions of law and fact common to the members of the Class and these common questions will predominate over any questions that may affect only individual Class members.  The claims of all Class members originate from the same misconduct and violations of law perpetrated by Defendants.  The common questions include, but are not limited to:

> a.  Whether the AWL Lending Enterprise (defined below) is an "enterprise" under 18 U.S.C. § 1961(4);
>
> b.  Whether the principals participating in the direction of the AWL Lending Enterprises did so through ongoing collection of illegal debt, in violation of 18 U.S.C. § 1962(c);
>
> c.  Whether Defendant Market View LLC and its John Doe members and executives agreed to assist the AWL Lending Enterprise and other "tribal" payday lenders, in monetizing their nonperforming assets and the extent of their knowledge of the illegal nature of these loan assets;

d.   Whether Defendant Northwood Asset Management Group, LLC and its John Doe members and executives agreed to purchase nonperforming consumer debt created by the AWL Lending Enterprise, with knowledge of the illegal conduct and activity of that Enterprise;

e.   The roles played by the John Doe members and executives of the two Defendant LLCs in the direction of the activity alleged in this Complaint;

f.   Whether the AWL loans held by Defendant Northwood are legally enforceable;

g.   Whether Defendant Northwood is a "debt collector" within the meaning of the FDCPA;

h.   Whether Defendant Northwood is attempting to collect AWL loans, what those activities entail, and the amount it has collected from AWL borrowers.

42.    <u>Predominance.</u> Under Rule 23(b)(3) the questions of law or fact common to class members concerning the racketeering underlying the AWL Lending scheme, the illegality of the loans produced by the scheme and the conduct of the Defendants to further and assist the scheme with knowledge of its illegal purpose will predominate over any questions affecting only individual members.

43.    <u>Superiority</u>.  Under Rule 23(b)(3), class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would entail.  The benefits of proceeding through the class mechanism, including providing injured persons with a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

44.    This action is also maintainable as a class action under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making

appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

45.     Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## VI.  Claims Alleged

*COUNT ONE: RICO, 18 U.S.C. § 1962(d)*
*Against All Defendants*
*For Knowingly Facilitating the Usurious Scheme of the AWL Lending Enterprise*

46.     The above allegations are incorporated and reasserted by this reference.

47.     The association-in-fact between AWL, the Otoe-Missouria tribe, Mark Curry and the Curry-owned entities involved in the marketing, underwriting, funding and collecting of AWL loans—referred to hereafter as the "AWL Lending Enterprise"—is an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

48.     The AWL Lending Enterprise has been engaged in, and its activities affect, interstate commerce.  The AWL Payday Lending Organization has leadership based in Mission, Kansas and San Juan, Puerto Rico, and operates throughout the United States, include making loans in this District, and using the interstate wires through the internet and mails to do so.

49.     The AWL Lending Enterprise constitutes an ongoing organization whose members have functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. During the relevant time period, it has been led, controlled, and/or managed by Curry and his various business entities, including MacFarlane Group and Sol Partners.

50.     The AWL Lending Enterprise has existed continually, using various forms and legal structures, since approximately February 2010, when American Web Loan, Inc. was

created, and it continues to the present time to the detriment of individual consumers throughout the United States.

51.     RICO defines as "unlawful debt" any debt incurred in connection with "the business of lending money or a thing of value at a usurious rate under State or Federal law, where the usurious rate is at least twice the enforceable rate."  18 U.S.C. § 1961(6).  Mark Curry and the various Curry-owned business entities that have directed and managed the AWL Lending Enterprise have violated RICO through the "collection of unlawful debt" as that term is defined in RICO, 18 U.S.C. § 1962(c).

52.     Defendant DebtTrader and its John Doe members, with knowledge that the AWL Lending Enterprise made and collected unlawful debts, purposefully and knowingly agreed to assist and facilitate this unlawful activity by arranging for the sale of usurious loan obligations to debt buyers and thereby monetizing nonperforming assets of the Enterprise for the benefit of the Enterprise. Pursuant to such agreements, Defendants arranged and brokered the sale of thousands of these illegal loans, a service for which they were amply compensated. These acts of Defendant DebtTrader and its John Doe members were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity.

53.     Defendant Northwood and its John Doe members, with knowledge that the AWL Lending Enterprise made and collected unlawful debts, purposely and knowingly agreed to assist and facilitate this unlawful activity by acquiring usurious debt created by the Enterprise. Pursuant to such agreements, Defendants have paid large sums of money to the Enterprise in exchange for these assets and, thereafter, have proceeded to collect or attempt to collect these illegal debts from Plaintiff and the class whose loans were also acquired by Defendant

Northwood.  These acts of Defendant Northwood and its John Doe members were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity.

54.     The conduct of Defendants violated 18 U.S.C. § 1962(d). That violation directly harmed and continues to harm the Plaintiff and the members of the proposed class.

55.     As a result of this violation of RICO, Defendants are jointly and severally liable to Plaintiff and the putative members of the Class for all the damages caused by the AWL Lending Enterprise, including hundreds of millions of dollars in illegal interest paid, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

*COUNT TWO: FDCPA, 15 U.S.C § 1692e*
*Against Defendant Northwood and the John Doe Members and Executives of*
*Defendant Northwood*

56.     The above allegations are incorporated and reasserted by this reference.

57.     Defendant Northwood and the John Doe members and executives of Northwood are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6) in that they use the interstate wire and telephone systems, and other instrumentalities of interstate commerce, and the mails in their business, the principal purpose of which is the collection of debts.

58.     Plaintiff and the Northwood Sub-Class she seeks to represent are "consumers" within the meaning of 15 U.S.C. § 1692a(3) in that they are natural persons who are obligors under AWL loan agreements.

59.      Defendants repeatedly telephoned Plaintiff Butler, falsely representing that she had a legal obligation to repay a balance still owing on her AWL loan, in violation of 15 U.S.C. § 1692e(2) and § 1692f(1).

60.     Defendants have consistently and repeatedly committed these same violations with regard to the other Northwood Sub-Class Members whose AWL loans were purchased by Northwood.

61.     Plaintiff is entitled to recover for the Northwood Sub-Class any actual payments made to Northwood, as well as statutory damages of $500,000 and attorney fees and costs, pursuant to 15 U.S.C. § 1692k.

*COUNT THREE: State Law*
*For Declaratory Relief Declaring the AWL Loans Held by Northwood to be*
*Void and Unenforceable*

62.     The above allegations are incorporated and reasserted by this reference.

63.     Prior to the sale of the Butler loan to Defendant Northwood, Plaintiff had already paid back the amount borrowed plus interest AWL could lawfully charge.

64.     Under the law of Pennsylvania, *see* 41 Purd. Pa. St. § 501, and the similar provisions of the other twenty-eight jurisdictions included within the Class and listed above, the purported indebtedness acquired and held by Northwood is legally unenforceable and void.

65.     To the extent the Northwood Sub-class Members have repaid to AWL and/or Northwood amounts in excess of the amount borrowed and of legally permissible interest charges, their purported indebtedness owed to Northwood is legally unenforceable and void, and Plaintiff and Northwood Sub-class seek a declaration to this effect.

**VII.  Prayer for Relief**

WHEREFORE, Plaintiff seeks the following relief:

A.  Certification of the alleged class, pursuant to Fed. R. Civ. P. 23(b)(2) and (3);

B.  Actual damages for all members of the class, trebled under 18 U.S.C. § 1964(c);

16

C.  Actual and statutory damages for all members of the Northwood Sub-Class, pursuant to

15 U.S.C. § 1692k;

D.  Declaratory relief in favor of the Northwood Sub-Class, establishing that any and all

indebtedness purportedly owed on account of AWL obligations is legally unenforceable

and void;

E.  An award of reasonable attorney fees and costs.

F.  Such other relief as the Court deems fair and reasonable.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.


Respectfully submitted,


/s/ Irv Ackelsberg
Irv Ackelsberg, PA Bar No. 23813
John J. Grogan, PA Bar No. 72443
David A. Nagdeman, PA Bar No. 327652
LANGER, GROGAN & DIVER, PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tele: (215) 320-5660
Fax:  (215) 320-5703
Email: iackelsberg@langergrogan.com

Dated: January 29, 2021